AUSTIN KNUDSEN
Montana Attorney General
PETER M. TORSTENSEN, JR.
 *Assistant Solicitor General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
peter.torstensen@mt.gov

DREW C. ENSIGN*
Drew C. Ensign, PLLC
202 E. Earll Drive, Suite 490
Phoenix, AZ 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
drewensignlaw@gmail.com

* Motion for *pro hac vice*
Admission Pending

*Counsel for Proposed Defendant-Intervenor*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MONTANA ENVIRONMENTAL INFORMATION CENTER, ET AL.,<br><br>*Plaintiffs,*<br><br>v.<br><br>MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY, CHRISTOPHER DORRINGTON, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF MONTANA ENVIRONMENTAL QUALITY, ET AL.,<br><br>*Defendants.* | Case No. CV-23-28-GF-BMM<br><br>STATE OF MONTANA BRIEF IN SUPPORT OF MOTION TO INTERVENE |

1

## INTRODUCTION

The State of Montana (the "State"), by and through Austin Knudsen, in his official capacity as Attorney General of Montana, respectfully seeks to intervene as a defendant in this action under Rule 24 to defend the validity of two of its duly enacted laws. Because the State would suffer irreparable injury from the invalidation of its statutes that Plaintiffs seek, and because intervention is warranted to ensure that those laws are defended adequately, the State's motion should be granted. Plaintiffs oppose this motion. Defendants take no position on this motion.

All of the requirements for intervention as of right are satisfied here. This motion is timely as it is filed two months after this suit was initiated. The State has protectable interests here since invalidation of its laws would inflict irreparable sovereign injury upon the State. And those interests would be impaired if Plaintiffs obtain the injunctive relief they seek. Finally, existing Defendants do not adequately represent the State's interests for at least two reasons: (1) they have publicly expressed their view that one of the statutes is invalid and (2) they have agreed to a *de facto* preliminary injunction against enforcement of the Act for more than half a year.

Alternatively, this Court should grant permissive intervention. This motion is timely, the State seeks to raise common arguments of law and fact in defense of the challenged statutes, and its participation will aid this Court in resolving this matter.

## BACKGROUND

This case involves challenges to two statutes (collectively, the "Acts"), which were recently enacted: House Bill 576 ("HB 576") and Senate Bill 392 ("SB 392"). Both statutes address mining activities within the State. Plaintiffs allege that the Acts violate the Surface Mining Control and Reclamation Act ("Surface Mining Act"), 30 U.S.C. §§ 1201-1328.

HB 576 eliminates a prior, irrebuttable presumption that violation of any water quality standard always constituted "material damage." The statute thus eliminates language that deemed any violation of water quality standards to be material damage "whether or not an existing water use is affected." *See* H.B. 576, 68th Leg., Reg. Sess., § 2 (Mont. 2023). Instead of an irrebuttable presumption, HB 576 establishes standards for evaluating whether "material damage" has occurred that examine the actual impact on water quality. *Id.* HB 576 also eliminates language

regarding hydrology studies. *Id.* § 3. HB 576 was effective immediately and applies to pending cases. *Id.* §§ 6-7.

SB 392, in Plaintiffs' description (Doc. 5 at 14), "removes the asymmetrical costs and attorney's fee provision of the Montana program and establishes a 'loser pays' regime." The effect is thus to create a level playing field in which the prevailing party generally receives its fees. SB 392 is explicit about its neutrality as to the parties in litigation: "In awarding costs pursuant to this section, *the court or administrative agency may not consider the identity of party*, including but not limited to a permittee, permit applicant, agency, public interest litigant, or other party to an action." S.B. 392, 68th Leg., Reg. Sess., § 1(2) (Mont. 2023) (emphasis added).

Under the prior system, plaintiffs asserting Surface Mining Act claims (which Plaintiffs here often do, *see* Doc. 5 at 16) were only liable for attorneys' fees if their positions were asserted in bad faith, while their opposing parties were generally liable for attorneys' fees whenever they lost. *See* Doc. 5 at 8-9.

Plaintiffs allege that this even-handed standard violates a Surface Mining Act implementing regulation, 43 C.F.R. § 4.1294(a)-(d).

## LEGAL STANDARD

Rule 24 provides for intervention both permissively and as-of right. A party may intervene as of right under Rule 24(a). In *Wilderness Society v. U.S. Forest Service*, the Ninth Circuit set forth its four-part test for motions to intervene of right:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).

This analysis is "guided primarily by practical considerations, not technical distinctions." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (cleaned up); *accord Wilderness Soc'y*, 630 F.3d at 1179 (reiterating importance of "practical and equitable considerations" as part of judicial policy favoring intervention). "[A] district court is required to accept as true the non-conclusory allegations made in support of an intervention motion." *Berg*, 268 F.3d at 819.

In addition, Rule 24(b)(1)(B) provides that "the court may permit anyone to intervene who ... has a claim or defense that shares with the

5

main action a common question of law or fact." Along with timeliness, "all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting 24(b)(1)(B).[1]

The Attorney General is empowered by Montana law to seek intervention in federal court on behalf of the State. *See Woodahl v. Mont. Bd. of Nat. Res. and Conservation*, 163 Mont. 193, 197, 516 P.2d 383, 386 (1973) ("the Attorney General 'may intervene in all suits or proceedings which are of concern to the general public.'" (quoting *State ex rel. Olsen v. Public Service Commission*, 129 Mont. 106, 115, 283 P.2d 594, 599 (1955)).; *see also Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191, 2201 (2022) ("[W]hen a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge.").

---

[1] *Kootenai Tribe* also has language restricting intervention as of right that was overruled in *Wilderness Society*. *Wilderness Society* does not undermine *Kootenai Tribe*'s holding regarding permissive intervention, however.

6

## ARGUMENT

### I. All requirements for Intervention as of right are satisfied here.

**A. This motion is timely.**

The State's motion is plainly timely. This suit was filed on June 1—barely over two months ago. The Ninth Circuit has found timely considerably greater intervals. *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1994) (motion was timely when motion filed "four months after [plaintiff] filed the action" and "before any hearings or rulings on substantive matters."). The State's motion also comes only 42 days since the Court granted approved the parties' joint stipulation to stay the case for 210 days. *See* Doc. 10.

The State's motion to intervene also will not delay the current schedule, thereby avoiding any potential prejudice. Existing Defendants have agreed not to enforce the challenged Acts for 210 days in return for a stay of briefing on the preliminary injunction motion/TRO. *See* Doc. 10. Given that proceedings are otherwise stayed, the existing parties will not suffer any prejudicial delay from the State's motion. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (the "requirement of timeliness is ... a guard against prejudicing the original parties..."); *Banco Popular*

7

*de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992) (prejudice is "a vital element of a timeliness inquiry.").

### B. The State has protectable interests in its statutes that could be impaired.

The State has an unquestionable interest in defending the validity of its duly enacted statutes. That is why, for example, "a State has standing to defend the constitutionality of its statute." *Diamond v. Charles*, 476 U.S. 54, 62 (1986); *see also* Fed. R. Civ. P. 5.1(c) (permitting intervention by state attorney general when constitutionality of state's statutes is questioned).

Similarly, "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coalition for Economic Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *accord Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (same). And "because the Article III standing requirements are more stringent than those for intervention under rule 24(a)," where a State has standing to defend a law, that "standing under Article III compels the conclusion that they have an adequate interest under" Rule 24. *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

8

For similar reasons, the State's interest in the validity of its laws could easily be impaired if this Court were to invalidate them, since that invalidation would cause the State irreparable harm. *Wilson*, 122 F.3d at 719. The potential-impairment requirement is thus satisfied as well. *Wilderness Society*, 630 F.3d at 1177 (applicant need only show that "the disposition of the action may as a practical matter impair or impede its ability to protect that interest").

### C. Existing Defendants do not adequately represent the States' interests.

The "burden of showing inadequacy of representation is '*minimal*' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)) (emphasis added). Courts consider several factors, including:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 952 (9th Cir. 2009).

The State's minimal burden here is satisfied here for two reasons. *First*, chief counsel for Defendant Department of Environmental Quality ("DEQ") openly expressed his view that SB 392 likely contravened federal law and was thus invalid. *See* Doc. 5 at 15; Doc. 5-1 at 3. Plaintiffs prominently (and happily) relied upon these very admissions by DEQ's chief counsel to support their request for a preliminary injunction. *Id.*

Given Defendant's publicly expressed view that SB 392 is likely unlawful, the State understandably has concerns about the robustness of the defense that existing Defendants may offer it. It is certainly *not* the case that Defendants "will undoubtedly make all of a proposed intervenor's arguments" given their prior willingness to declare publicly positions directly opposed to those of the State, *Perry*, 587 F.3d at 952—which is prepared to defend the Acts fully and believes the Acts to be fully *valid*.

*Second*, existing Defendants *agreed* with Plaintiffs not to "take any action to apply, effectuate, or enforce the provisions of House Bill 576 or Senate Bill 392 for 210 days." Doc. 10 at 1. In essence, existing Defendants agreed to a preliminary injunction against the Acts for at least 210

10

days. That agreement inflicts "irreparable injury" on the State by preventing its duly enacted laws from being enforced. *Wilson*, 122 F.3d at 719.

Nor was this any short-term delay so that briefing could be conducted at a reasonable pace. That could have been accomplished by a delay of 30 days or less. Instead, existing Defendants have conferred upon Plaintiffs what amounts to a preliminary injunction for more than half a year, all without Plaintiffs having to prove a single fact or prevail on a single legal argument.

The State would never have agreed to such a 210-day *de facto* injunction, and instead would have filed a response to the motion for a preliminary injunction within a month or less. Given existing Defendants apparent inability or unwillingness to offer a timely defense of the Acts, and instead to acquiesce in the *de facto* invalidation of the Acts during that long delay, the State can easily satisfy its minimal burden here.

## II. Alternatively, this Court should grant permissive intervention.

Even if the Court declines to grant the State's motion to intervene as of right, this is precisely the type of case where permissive intervention is warranted. Federal courts may permit intervention by litigants

who have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Where a litigant "timely presents such an interest in intervention," the Court should consider:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

As explained more fully above, the State has a compelling interest in the outcome of this action and has standing to defend the constitutionality of its laws. It further seeks to advance "defense[s] that share[] with the main action ... common questions of law or fact," Fed. R. Civ. P. 24(b)(1)(B)—*i.e.*, arguments that the State's Acts are valid.

Furthermore, the State's motion is timely as discussed above. And the State's participation will not unnecessarily prolong, prejudice, or unduly delay the litigation. Indeed, the State's participation will

12

"significantly contribute to ... the just and equitable adjudication of the legal questions presented." *Schwarzenegger*, 630 F.3d at 905.

For these reasons, the State satisfies all requirements for permissive intervention and a favorable exercise of discretion is warranted.

## CONCLUSION

For the reasons stated above, the State requests that the Court grant its motion to intervene, either as of right or permissively.

DATED this 3rd day of August, 2023.

> Respectfully,
> AUSTIN KNUDSEN
> Montana Attorney General
>
> */s/ Peter M. Torstensen, Jr.*
> PETER M. TORSTENSEN, JR.
> *Assistant Solicitor General*
> 215 North Sanders
> P.O. Box 201401
> Helena, MT 59620-1401
> Phone: 406.444.2026
> Peter.Torstensen@mt.gov

Drew C. Ensign*
Drew C. Ensign PLLC
202 E. Earll Drive
Suite 490
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
drewensignlaw@gmail.com

* Motion *pro hac vice* admission forthcoming

*Counsel for Proposed Defendant-Intervenor*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule Local Rule 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Century Schoolbook text typeface of 14 points; is double-spaced except for footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows is 2,297 words, excluding tables of content and authority, certificate of service, certificate of compliance, and exhibit index.

/s/ Peter M. Torstensen, Jr.
PETER M. TORSTENSEN, JR.

## CERTIFICATE OF SERVICE

I certify that on August 3, 2023, I filed the foregoing document with the Clerk of the Court for the United States District Court for the District of Montana, Great Falls Division by personal delivery. Participants in the case who are registered ECF users will be served by the ECF system when the motion is docketed. In addition, Intervenors will serve copies on lead counsel for Plaintiffs and Defendants via U.S. mail, postage prepaid and email.

Dated: August 3, 2023      /s/ Peter M. Torstensen, Jr.
                           PETER M. TORSTENSEN, JR.